UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

TAMARACK DEVELOPMENT ASSOCIATES, LLC,

      Debtor.

Case No. BT 16-06117

Chapter 7

_____/

## OPINION DENYING MOTION TO ENFORCE AUTOMATIC STAY

Appearances:

Thomas R. Morris, Esq., Farmington Hills, Michigan, attorney for Movant, Richard C. Hermann.

Brace Kern, Esq., Traverse City, Michigan, attorney for Respondent Creditors, Tim and Tonya Cook, Arthur and Jacolyn Breithaupt, Edgar and Janet Boettcher, Steven and Susan Fournier, Gary and Diane Money, Michael Radosa, David MacIntosh, and David Steffey.

## I.       INTRODUCTION AND JURISDICTION.

In this contested matter, Richard C. Hermann ("R.C. Hermann") asserts that Tim and Tonya Cook, Arthur and Jacolyn Breithaupt, Edgar and Janet Boettcher, Steven and Susan Fournier, Gary and Diane Money, Michael Radosa, David MacIntosh, and David Steffey (collectively, the "Respondent Creditors"), along with their attorney, violated the automatic stay by commencing and pursuing two state court lawsuits during the pendency of the bankruptcy case of Tamarack Development Associates, LLC ("Tamarack" or the "Debtor"). The lawsuits, in which R.C. Hermann is one of several named defendants, assert that Mr. Hermann breached the Debtor's operating agreement, oppressed the Respondent Creditors, and tortiously interfered with their contractual relations while

1

serving as the President and Manager of the Debtor. R.C. Hermann argues that many of the allegations in the state court complaint assert derivative claims that became property of the Debtor's estate upon the filing of its bankruptcy case. He asks this court to determine that the Respondent Creditors have violated the automatic stay by pursuing these claims, find the Respondent Creditors in contempt of court, and order them to dismiss all but a handful of delineated allegations in the state court complaints. His current motion does not seek damages for the alleged stay violation under § 362(k) of the Bankruptcy Code[1] but reserves his right to do so in the future.

The Respondent Creditors argue that the causes of action asserted in the state court lawsuits are direct claims, seeking redress for damages done to the Respondent Creditors as shareholders of the Debtor LLC. As such, they argue that their claims are separate and distinct from claims that may be asserted by the Debtor itself or by the Trustee on the Debtor's behalf. The Respondent Creditors contend that the bringing of direct claims for shareholder oppression and other breaches does not constitute an attempt to exercise control over causes of action that are property of the bankruptcy estate in violation of the automatic stay. They also dispute R.C. Hermann's standing to argue otherwise.

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.). This contested matter is a statutory core proceeding and the court has authority to enter a final order. 28 U.S.C. § 157(b)(2)(A)

---

[1]     The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq.* Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ __."

2

and (O); *see In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567, 573-74 (6th Cir. 2005) (motions to enforce the automatic stay constitute core proceedings).

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

### A. *General Background and the Bankruptcy Filing.*[2]

Tamarack Development Associates, LLC, was formed by Richard C. Hermann in 2005 to develop and operate a condominium and hotel known as the Tamarack Lodge on East Grand Traverse Bay in Traverse City, Michigan.  R.C. Hermann is the sole Class B shareholder of Tamarack and has served as its Manager since its inception.  When Tamarack was initially established or shortly thereafter, Hermann solicited investments from approximately twenty individuals or entities who became the LLC's Class A shareholders.  In exchange for their investment, and under the terms of the Tamarack Operating Agreement, the Class A members were promised a "Priority Income Return" of twenty-five percent annual, non-compounded yield and a "Priority Return of Capital" such that no other debt, other than Tamarack's construction loan, could be paid before return of the Class A members' investment plus yield. R.C. Hermann personally guaranteed payment of the priority income returns within thirty-six months in a separate Guaranty Agreement dated July 14, 2005.

Construction of the Tamarack Lodge was completed in July of 2006, and sales of fractional condominium units initially went well.  However, sales declined over the next

---

[2]     The facts set forth in this section are taken from the court's record in this case, including the Declaration of Richard C. Hermann in Support of First Day Pleadings (Dkt. No. 13.), the Judgment Creditors' Motion and Brief to Dismiss (Dkt. No. 33), and the responses thereto (Dkt. No. 37, 39).  The facts regarding the prepetition relationships and actions of the various parties are provided for context only and do not constitute findings of fact.

couple of years.  By December of 2008, Hermann informed the Class A members that the Debtor was "underwater" on its loans and in need of more capital.  Many of the Class A members, particularly the individual investors from the Traverse City area, declined to invest more money.  As a result, they allege that Hermann sought investments from other sources and improperly amended the Debtor's Operating Agreement to establish two new classes of investors, Class AA and Class AAA.  According to the Traverse City Class A members, many of the investors included in the new classes had connections to R.C. Hermann.  For instance, Class AA consisted of a group of investors from the Chicago area, who were also Class A members and were controlled by, related to, or brought in to the project through Hermann's attorney, Donald J. Russ, Jr.  Another Class AA and AAA member, Comodore Homes, LLC, was owned by Hermann's sister, Jean Hermann.

On October 31, 2014, two Traverse City Class A members, Tonya Cook and David Steffey (referred to herein as the "Judgment Creditors"), filed a lawsuit against Tamarack and Hermann individually in the Grand Traverse County Circuit Court.  Among other things, the Judgment Creditors asserted that creation of the Class AA and AAA interests and the failure to provide the priority income returns promised to the Class A investors constituted a breach of the Operating Agreement by both Tamarack and Hermann.  The Judgment Creditors also asserted that Hermann had breached his separate, personal guaranty that they would receive payment of the "priority returns" within thirty-six months of the date of their investment.  The Judgment Creditors prevailed on both these claims in arbitration,[3] but a judgment was entered only against Tamarack and not against Hermann personally.  Tamarack appealed entry of the judgment against it; the Judgment

---

[3]     Specifically, the arbitrator found Tamarack liable for breach of the operating agreement and R.C. Hermann liable for breach of the guaranty.

4

Creditors appealed the trial court's failure to enter a judgment against Hermann.[4]

This bankruptcy case began shortly thereafter, with the filing of an involuntary chapter 11 petition against Tamarack on December 6, 2016.[5]  (Dkt. No. 1.)  The Debtor did not contest the involuntary petition, and an order for relief was entered on January 4, 2017.  (Dkt. Nos. 8 & 10.)

Although the Debtor and the Petitioning Creditors believed that the bankruptcy filing was necessary and appropriate, the Judgment Creditors disagreed.  On January 20, 2017, they moved to dismiss the chapter 11 case, arguing that the bankruptcy filing was "legal gymnastics" meant to stay the appeal of the prepetition judgment and further the subordination of the Class A interests.  (Dkt. No. 33.)  The court referred the Motion to Dismiss to its Alternative Dispute Resolution program but attempts to mediate the issues were not successful.  Ultimately, the Judgment Creditors withdrew the Motion to Dismiss and consented to conversion of the bankruptcy case from chapter 11 to chapter 7.  (Dkt. No. 121.)  An order converting the case was entered on October 17, 2017.  (Dkt. No. 123.)  Kelly M. Hagan was appointed as the Chapter 7 Trustee.

---

[4]     The appeal was stayed as to Tamarack by the subsequent filing of the bankruptcy case but continued as between the Judgment Creditors and R.C. Hermann.  On November 21, 2017, the Michigan Court of Appeals reversed the circuit court's refusal to enter judgment against Hermann for breach of the guaranty and remanded the case.  (*See* Opinion and Order Reversing in Part and Remanding, Case No. 335989 (Mich. App. Nov. 21, 2017)).  The Grand Traverse Circuit Court entered a judgment against Hermann and in favor of the Judgment Creditors on December 4, 2017.  (*See* Order of Judgment, Exh. 1 to Judgment Creditors' Motion for Relief from Stay, Dkt. No. 296.)

[5]     The involuntary petition was filed by Comodore Homes, LLC, the entity owned by Jean Hermann, and F.C. Real Estate Retirement Plan and the Howard Melam Family Limited Partnership, entities represented or controlled by Donald J. Russ, Jr. (these entities are collectively referred to herein as the "Petitioning Creditors").

B.   *Postpetition State Court Litigation.*

On December 13, 2017, the Judgment Creditors, joined by several other Class A Members of the Debtor,[6] filed a lawsuit (the "2017 lawsuit") against Mr. Hermann and a number of other defendants[7] in the Grand Traverse County Circuit Court.  (*See* Complaint and Demand for Initiation of Arbitration, Case No. 2017-32396-CK, Dkt. No. 225 at Exh. 4.)   The 2017 complaint alleges Hermann conspired with the other State Court Defendants to take various actions which were aimed at prioritizing their own "investments, voting strength, returns and likelihood of distributions" while simultaneously "diluting" the Class A rights and voting power and interfering with the priority return of capital that had been promised to the Respondent Creditors.  (*See* 2017 Complaint, at ¶¶ 9, 12 & 13.)  Based on these general allegations, the 2017 complaint asserted three legal causes of action:   (1) breach of the Tamarack Development Associates, LLC operating agreement; (2) willfully unfair and oppressive conduct toward the Class A Members under the Michigan Limited Liability Company Act, Mich. Comp. Laws, § 450.4515; and (3) tortious interference with contractual relations.   The state court entered an order dismissing the breach of operating agreement and tortious interference

---

[6]     The Plaintiffs in the 2017 lawsuit are:  Arthur & Jacolyn Breithaupt, David K. MacIntosh and the David K. MacIntosh Trust, Janet L. Boettcher and the Janet L. Boettcher Trust, Michael R. Radosa and the Michael R. Radosa Trust, Susan K. Fournier and the Susan K. Fournier Trust, Gary and Diane Money, Tim and Tonya Cook, and David Steffey.  The state court Plaintiffs are referred to collectively herein as the "Respondent Creditors."

[7]     In addition to Mr. Hermann, the Defendants in the 2017 lawsuit are:  Howard Melam Family, LP, FC Real Estate Retirement Plan, RB Construction Defined Benefit Plan, Sandz Real Estate Co. Inc. Profit Sharing Plan, View Capital Ventures, LP, MS Holding LP, Comodore Homes, LLC, Zisook Enterprises, LP, Daniel M. Webster Traditional IRA, Barbara F. Webster Traditional IRA, Daniel M. Webster, and Barbara F. Webster.  These individuals and entities are referred to collectively herein as the "State Court Defendants."

claims against R.C. Hermann on June 21, 2018.[8]  The other claims were dismissed by entry of various orders, the last of which was entered on December 6, 2018.  The Respondent Creditors appealed the dismissal, seeking to restore all of their claims against R.C. Hermann and the other defendants.

On August 29, 2018, the Respondent Creditors filed a second lawsuit (the "2018 lawsuit") against Mr. Hermann and the other State Court Defendants in the Grand Traverse County Circuit Court.  (*See* Complaint, Case No. 2018-34575-CK, Dkt. No. 225 at Exh. 4; Amended Complaint, Dkt. No. 287.)  The 2018 complaint includes many of the same factual allegations as the 2017 complaint but asserts only one legal cause of action for willfully unfair and oppressive conduct under the Michigan LLC Act., Mich. Comp. Laws § 450.4515.  On March 24, 2019, the state court entered an order compelling arbitration of the claim against R.C. Hermann and two other defendants but declining to order arbitration of the claim against the other defendants.  The Respondent Creditors appealed the arbitration order, and that appeal was consolidated with the appeal in the 2017 lawsuit.

C. *The Adversary Proceeding Against Richard C. Hermann*.

Around the same time that the litigation brought by the Petitioning Creditors was pending in the state court, the Chapter 7 Trustee was pursuing the bankruptcy estate's claims against Mr. Hermann and others in the bankruptcy case.  The Trustee filed an adversary proceeding against Mr. Hermann and six other entities that were managed by Mr. Hermann on October 31, 2018.  (*See* AP No. 18-80140.)  The complaint made several allegations, mainly pertaining to approximately $2,400,000 paid by the Debtor toward a

---

[8]     The basis for dismissal of these claims is not stated in the record currently before this court.

promissory note under which one of the defendants, Copperfield Investors Limited Partnership ("Copperfield"), was the primary obligor.  Among other relief, the complaint sought reimbursement or contribution from R.C. Hermann and the other defendants for the amounts paid by the Debtor under the Copperfield Note.  The Trustee also initiated two other adversary proceedings against businesses managed by Mr. Hermann on October 31, 2018.   (*See* AP Nos. 18-80141 and 18-80142.)   These adversary proceedings sought avoidance and recovery of certain alleged preferential and postpetition transfers.

Mr. Hermann and the other adversary defendants eventually entered into a settlement agreement with the Trustee.  The settlement provided for dismissal of all three adversary proceedings, and a release of all claims that were property of the estate against Mr. Hermann and the other defendants.  In exchange, Hermann and the defendants paid the estate $300,000, purchased certain estate property for $55,000, and released their claims to approximately $200,000 in escrowed funds and rental revenues.  The Trustee filed a motion for approval of the settlement agreement on January 15, 2019. (Dkt. No. 212.)   The Respondent Creditors objected to approval of the settlement, and an evidentiary hearing was scheduled for April 19, 2019.   The Respondent Creditors' objection was resolved just prior to commencement of the evidentiary hearing, and an order approving the settlement was entered by this court on April 24, 2019.  (Dkt. No. 228.)

### D.  *R.C. Hermann's Motion to Enforce Automatic Stay.*

On April 12, 2019, nearly a year and a half after the filing of the 2017 lawsuit and just one week prior to the scheduled hearing on approval of the settlement of the

adversary proceedings, R.C. Hermann filed the Motion to Enforce Automatic Stay that is currently before the court.  (Dkt. No. 225.)  In his motion, R.C. Hermann argues that the claims alleged by the Respondent Creditors in the 2017 and 2018 state court complaints are property of the bankruptcy estate.  As such, Hermann asserts that only the Trustee, or another person authorized to represent the estate, is entitled to pursue such claims. He argues that the commencement and continuation of the 2017 and 2018 lawsuits by the Respondent Creditors, who are not acting as authorized representatives of the estate, violates the automatic stay.  He asks this court to find that the Respondent Creditors are in contempt and order them to dismiss all but a few paragraphs in the state court complaints.

Oral argument on the Motion to Enforce the Automatic Stay was held before this court on September 19, 2019.  At the conclusion of the argument, the court took the matter under advisement.[9]

The Chapter 7 Trustee filed her Final Report on November 13, 2019.  (Dkt. No. 291.)  No objections were made to the Final Report, and it was approved by the court on December 17, 2019.  (Dkt. No. 299.)  The Trustee will presumably make disbursements pursuant to the Final Report and the case will likely be closed in the near future.  Once the case is closed, the automatic stay will no longer be in effect.  *See* 11 U.S.C. § 362(c)(2).

---

[9]     The court also requested two supplemental exhibits, which were filed by R.C. Hermann's counsel on September 23, 2019.  (Dkt. No. 287.)

9

III.    DISCUSSION.

R.C. Hermann's motion asserts that the Respondent Creditors have violated the automatic stay by pursuing causes of action that are property of the Debtor's bankruptcy estate in the state court litigation.  The automatic stay is often described as one of "the most fundamental debtor protections in bankruptcy law." *Cousins v. CitiFinancial Mortgage Co. (In re Cousins)*, 404 B.R. 281, 286 (Bankr. S.D. Ohio 2009) (citations omitted).  Upon the filing of a bankruptcy petition, the stay prohibits several actions, including the commencement or continuation of proceedings against the debtor, § 362(a)(1), and acts to take possession of, or exercise control over, property of the estate, § 362(a)(3).  The legislative history of § 362 explains that, by stopping "all collection efforts, all harassment, and all foreclosure actions," the automatic stay "gives the debtor a breathing spell from his creditors."  *See* H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97.  The stay also provides some measure of protection to creditors by "preventing particular creditors from acting unilaterally in self-interest . . . to the detriment of other creditors."  *In re Johnson*, 548 B.R 770, 786 (Bankr. S.D. Ohio 2016) (citations omitted).

As evidenced by the statutory language and the legislative history, the automatic stay is primarily designed to protect the debtor and the bankruptcy estate, and its protections do not often extend directly to non-debtor third parties like R.C Hermann, the movant here.  In the Sixth Circuit, for example, it is well-settled that the automatic stay of proceedings against the debtor under § 362(a)(1) does not bar actions against non-debtor third parties[10] absent "unusual circumstances" and the issuance of an injunction under

---

[10]    The Sixth Circuit has explained that it "is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-

10

§ 105(a).  *See In re Spiech Farms, LLC*, 603 B.R. 395 (Bankr. W.D. Mich. 2019) (citing

*Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 314-15 (6th Cir. 2000); *Patton v.*

*Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)).  Section 362(a)(3), which prohibits acts to

possess or control property of the estate, has a slightly broader application.  *See In re*

*Johnson*, 548 B.R. at 790 (noting that § 362(a)(3) "reaches farther than other provisions

in § 362") (citations omitted).  The Sixth Circuit has noted, in slightly different context,[11]

that "'an action taken against a nondebtor which would inevitably have an adverse impact

upon the property of the estate must be barred by the § 362(a)(3) automatic stay

provision.'"  *In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567, 578 (6th Cir. 2005)

(quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 392 (2d Cir.

1997)).  In such instances, the protection that § 362(a)(3) affords to property of the estate

may also incidentally benefit non-debtor defendants by staying litigation brought against

them.  *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987) (holding that

the automatic stay prohibited landlord's actions against non-debtor third party and

describing the third party as an "incidental beneficiary" of the court's application of

§ 362(a)(3)).

---

obligors, or others with a similar legal or factual nexus" to the debtor.  *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196-97 (6th Cir. 1983).  In support of this conclusion, the court explained that "[n]othing in the legislative history counsels that the automatic stay should be invoked in a manner which would advance the interests of some third party, such as the debtor's co-defendants, rather than the debtor or its creditors."  *Id*. at 1197.

[11]      Section 362(a)(3) "applies to two types of claims:  claims that belong to the debtor under applicable state (or federal) law, and claims that seek to recover property of the estate that is controlled by a person or entity other than the debtor."  *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 588 (5th Cir. 2008).  *National Century* involved a claim in the latter category, while R.C. Hermann's allegations in this case fall under the former category.  The effect of the stay on the non-debtor party, however, is similar in both instances.

It is self-evident that the filing and pursuit of causes of action belonging to the estate by an entity other than the trustee has the potential to adversely affect the estate and constitutes an improper exercise of control over property of the estate in violation of § 362(a)(3).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" and it is well-settled that these interests include causes of action.  11 U.S.C. § 541(a)(1); *see Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988).  The trustee has the exclusive authority to pursue prepetition causes of action belonging to the debtor.  *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002).  It follows that any other person or entity who asserts those causes of action violates the automatic stay.  *In re Nicole Gas Production, Ltd.*, 916 F.3d 566, 577-78 (6th Cir. 2019) (debtor's sole shareholder violated automatic stay by asserting claims belonging to the bankruptcy estate), *cert. denied*, 140 S. Ct. 39 (2019).

The question of whether the causes of action asserted by the Respondent Creditors in the state court litigation are derivative claims that constitute property of the Debtor's bankruptcy estate or direct claims belonging to the shareholders themselves is considerably "more difficult."  *In re Spiech Farms, LLC*, 603 B.R. at 401.  That difficulty is compounded in this case by both the identity of the movant and the timing of his request to enforce the stay.

In a typical chapter 7 case, it is the chapter 7 trustee, as representative of the bankruptcy estate and the party with exclusive authority to bring causes of action on the estate's behalf, who asserts that a violation of §362(a)(3) has occurred.  *See, e.g.*, *In re Nicole Gas Prod., Ltd.*, 916 F.3d at 569-70 (action by chapter 7 trustee for violation of the

12

automatic stay and contempt sanctions); *In re Spiech Farms, LLC*, 603 B.R. at 398 (same).  The Trustee in this case has made no such allegation.  Instead, it is R.C. Hermann, the defendant in the state court litigation, who has asserted the stay violation.  Although Mr. Hermann is a creditor of the bankruptcy estate, he has made it clear that he is asserting the stay violation not in his capacity as a creditor, but as a party to the settlement with the Trustee.  Accordingly, before the court addresses the underlying issue of whether the Respondent Creditors violated the automatic stay by pursuing causes of action that were property of the estate, it must first consider whether R.C. Hermann is among the parties who may properly raise the stay violation issue.

A. *R.C. Hermann's Cause of Action for Alleged Stay Violations*.

As a threshold matter, this court must determine whether R.C. Hermann, who is neither the debtor nor the trustee, may assert a cause of action for violation of the automatic stay under § 362(a)(3).  Prior to the Supreme Court's recent decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127, 134 S. Ct. 1377 (2014), this question was considered under the rubric of prudential standing.[12]

---

[12]   In addition to meeting prudential standing requirements, a plaintiff seeking to invoke federal court jurisdiction must also establish its Article III standing by showing:  (1) that it "suffered an injury in fact," (2) that the injury "is fairly traceable to the challenged conduct of the defendant," and (3) that the injury "is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992)) (additional citation omitted).  The court finds that R.C. Hermann has established his standing under Article III.  Hermann has incurred costs both in defending the state court litigation and in bringing the current motion.  These injuries are a direct result of the Respondent Creditors' actions in filing the state court claims and they would be redressed by any order of this court that ultimately declares them void as violations of the stay or awards damages. *See Ampal-American Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013); *but cf. In re Trailer Source, Inc.*, 555 F.3d 231 (6th Cir. 2009) (Rogers, J., dissenting) (applying the "person aggrieved" standard for appellate standing and noting, in that context, that merely permitting litigation to go forward "does not directly diminish a defendant's property, increase his burdens, or impair his rights").

Prudential standing has not been "exhaustively defined" but was previously understood as encompassing "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches," and most relevant to this case, "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12, 124 S. Ct. 2301 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315 (1984)).

The Supreme Court's decision in *Lexmark* clarified that referring to the zone of interest test as an aspect of prudential standing is a "misnomer." *Lexmark*, 572 U.S. at 127 (citation omitted). The zone of interest analysis asks whether a particular person has a right to sue under a particular substantive statute. *Id.* (quoting *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675-76 (D.C. Cir. 2013) (Silberman, J., concurring)). Unlike standing issues, which affect the court's jurisdiction, *Lexmark* explained that "the absence of a cause of action is a *merits* issue that does not implicate the court's constitutional power to decide the case." *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019) (citing *Lexmark*, 572 U.S. at 128 n.4) (emphasis in original). As a result, the determination of "whether the plaintiff has a cause of action" should be viewed as "a 'straightforward question of statutory interpretation.'" *Id.* (quoting *Lexmark*, 572 U.S. at 129). In this case, the question before the court is whether R.C. Hermann is among the parties the Bankruptcy Code authorizes to enforce the automatic stay or to seek redress for violations thereof. The court will use "traditional tools" of statutory interpretation to answer this question. *Lexmark*, 572 U.S. at 127-28.

Statutory interpretation begins with the language of the statute itself, and in this case, the statute in question is § 362. Within the Sixth Circuit, it is well-settled that actions taken in violation of the automatic stay imposed by § 362 are "invalid and voidable." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). It is also widely accepted that violations of the automatic stay may be addressed through the bankruptcy court's civil contempt powers. *In re Spiech Farms, LLC*, 603 B.R. 395, 408-09 (Bankr. W.D. Mich. 2019) (citations omitted). However, the language of § 362 does not specify who is entitled to seek either type of relief – a declaratory judgment or civil contempt sanctions – for violations of the automatic stay.[13]

As previously noted, the legislative history of § 362 makes it clear that the automatic stay is primarily intended to protect the debtor and property of the estate. *See* H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. For this reason, "some courts have concluded that only the trustee, or in some instances the debtor, can enforce the automatic stay's protections . . . ." *In re Trailer Source, Inc.*, 555 F.3d at 254 (Rogers, J., dissenting) (citing *In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir.

---

[13] Section 362(k), by contrast, establishes a private right of action for "individuals" damaged by "willful" violations of the automatic stay. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000). The scope of the term "individuals" as used in § 362(k) has been the subject of much disagreement in the published caselaw. Courts have differed on whether the term applies only to natural persons, and whether it extends to creditors as well as debtors and the bankruptcy estate.

Although R.C. Hermann has not requested damages under § 362(k), the court finds that caselaw decided under § 362(k) is instructive on the issue of whether a state court defendant like Mr. Hermann has standing to enforce the automatic stay by invoking this court's general contempt powers. *See Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer)*, 178 B.R. 160, 168 (Bankr. E.D. Tenn. 1995) (bankruptcy court should not use its general equitable powers to protect a non-debtor, non-creditor third party who would not otherwise have standing to assert a violation of the automatic stay) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988) (Bankruptcy courts' equitable powers "must and can only be exercised within the confines of the Bankruptcy Code.")).

1991)) (additional citations omitted). Other courts have recognized that the stay also provides some degree of "creditor protection," because it prevents single creditors from attempting to "jump the line and seize property of the estate to satisfy [their] claim" to the detriment of other creditors. *In re Ampal-American Israel Corp.*, 502 B.R. at 369-70 (citation omitted). These courts have held that creditors may have standing to assert violations of the automatic stay under appropriate circumstances. Such circumstances only arise, however, when the creditor alleges "an injury in his capacity as a creditor of the estate rather than in some other capacity" and a "direct particularized injury" that is distinct from the general injury done to the estate. *Id.* at 370-71; *McCord v. Sofer (In re Sofer)*, 507 B.R. 444, 449 (Bankr. E.D.N.Y. 2014), *aff'd*, 613 F. App'x 92 (2d Cir. 2015).

In this case, the court need not decide the question of whether creditors fall within the zone of interests protected by the automatic stay because, although R.C. Hermann is a creditor of the bankruptcy estate, he has not asserted stay violations at issue in that capacity. [14] Instead, he has asserted that his standing to allege the stay violation arises by virtue of his status as a party to a settlement with the Trustee. Unfortunately for Mr. Hermann, there is very little authority suggesting that the automatic stay is intended to protect parties who may be liable to the estate or who have paid money to the estate as part of a settlement of that potential liability.

The primary case cited by Mr. Hermann is *In re Teleservices Group, Inc.*, 463 B.R. 28 (Bankr. W.D. Mich. 2012). In *Teleservices*, the party seeking to enforce the automatic stay, Huntington National Bank, was the recipient of an alleged fraudulent transfer of

---

[14] As Mr. Hermann's counsel stated at oral argument, the issue of whether a creditor should be permitted to assert a stay violation to protect the estate is not the question currently before the court because Mr. Hermann "is not coming in here to try to protect the estate; he is trying to protect himself." (Transcript of Hearing Held on September 19, 2019, Dkt. No. 288, at 32.)

almost $2 million.  The Trustee filed an adversary proceeding, seeking to recover the transfer from Huntington.  Concurrently, the entity that made the transfer was pursuing separate litigation against Huntington, asserting that Huntington had been unjustly enriched by the same $2 million transfer.  Noting that the pendency of both causes of action "raise[d] the spectre of Huntington having to pay twice," the *Teleservices* court concluded that "[i]t only seems fair . . . that Huntington should be able to ask this court whether the Section 362 stay applies" to bar pursuit of the unjust enrichment action.  *Id.* at 32.  Therefore, the court held that Huntington had standing to bring its motion to enforce the automatic stay, even though it was not a creditor of the bankruptcy estate.

The present case is distinguishable from *Teleservices.*  In that case, the litigation that Huntington sought to stay exposed it to duplicate liability for the exact same transfer that was being pursued by the trustee in the adversary proceeding.  Here, R.C. Hermann had already entered into a settlement agreement with the Trustee when his motion to enforce the stay was filed, and the estate's claims against him have been resolved.  To the extent the Respondent Creditors have asserted separate, direct causes of action against Hermann in the state court litigation, those claims do not involve the estate and do not expose Hermann to double liability for the same injury.  Furthermore, to the extent the Respondent Creditors attempt or intend to assert claims that belong to the estate and are already subject to the settlement, R.C. Hermann may question in state court their standing or argue that the claims have been satisfied or released.  Again, the estate has no stake in the success of any such arguments, as its claims against Hermann have already been resolved.  At this stage of the bankruptcy case, neither scenario has the potential to impact the bankruptcy estate and neither scenario presents a situation that

the automatic stay was intended to address.  R.C. Hermann's interest in stopping or limiting the state court litigation against him is simply not within the "zone of interests" protected by the automatic stay.  Accordingly, the court concludes that he is not among the parties who may seek enforcement of the automatic stay.

B.  *Direct v. Derivative Causes of Action?*

Even if Mr. Hermann falls within the zone of interests covered by the automatic stay, his assertion that the particular actions taken by the Respondent Creditors violate the stay is unavailing.  As previously noted, the trustee has the exclusive authority to pursue prepetition causes of action belonging to the debtor, and any other person or entity who asserts those causes of action violates the automatic stay.  *In re Nicole Gas Production, Ltd.*, 916 F.3d 566, 577-78 (6th Cir. 2019); *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002).  On the other hand, if "a cause of action belongs *solely* to the estate's creditors, then the trustee has no standing to bring the cause of action" on behalf of the estate.  *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir. 1997) (emphasis in original) (quotation omitted).  If recovery by either a creditor or the estate would "preclude[] the other from a subsequent recovery, then the claims are not truly independent" and "by default, the claims are exclusively" property of the bankruptcy estate.  *In re Van Dresser Corp.*, 128 F.3d at 947-48.

The determination of whether a claim is a direct claim, belonging to an individual creditor, or a derivative claim, belonging to the estate, is made in accordance with state law.  *In re Van Dresser Corp.*, 128 F.3d at 947.  If, under the applicable state law, the debtor could have raised the claim as of the commencement of the bankruptcy case, "then that claim is the exclusive property of the bankruptcy estate and cannot be asserted

18

by a creditor." *Id.* (citing *Schertz-Cibolo-Universal City Indep. School Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994)). This inquiry requires the court to examine the "nature of the injury for which relief is sought." *In re Educators Group Health Trust*, 25 F.3d at 1284. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id.* "'Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case and thus is not property of the estate.'" *In re Van Dresser*, 128 F.3d at 947 (quoting *In re Educators Group Health Trust*, 25 F.3d at 1284).

In general, under Michigan law, "a suit to enforce corporate rights or to redress or prevent injury to the corporation, whether arising from contract or tort, . . . must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 278 (Mich. App. 2003); *see also Salem Springs, LLC v. Salem Twp.*, 880 N.W.2d 793, 801 (Mich. App. 2015) (noting that "the rules regarding corporate form apply equally to limited liability companies"). Accordingly, "where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." *Michigan Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. App. 1989).

There are, however, two exceptions to this general rule "which enable a shareholder to sue on his or her own behalf." *Karmanos v. Bedi*, 2018 WL 6252038, *3 (Mich. App. Nov. 29, 2018) (unpublished opinion). The first exception applies when the

"shareholder 'has sustained a loss separate and distinct from that of other stockholders generally.'" *Id.* (quoting *Christner v. Anderson, Nietzke & Co., P.C.*, 444 N.W.2d 779, 783 (Mich. 1989)).  The second arises when the "shareholder 'can show a violation of a duty owed directly to [him or her] that is independent of the corporation.'"  *Id.* (quoting *Belle Isle Grill Corp.,* 666 N.W.2d at 278-79).

The sole cause of action asserted by the Respondent Creditors in the 2018 lawsuit is shareholder oppression under Section 515 of the Michigan Limited Liability Company Act, Mich. Comp. Laws § 450.4515.  That statute provides:

> *A member of a limited liability company may bring an action* in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member.

Mich. Comp. Laws § 450.4515(1) (emphasis added).  The Michigan Court of Appeals has construed a nearly identical provision in the Michigan Business Corporation Act, Mich. Comp. Laws § 450.1489, as creating a direct cause of action in favor of corporate shareholders.  *Estes v. Idea Eng'g & Fabricating, Inc.*, 649 N.W.2d 84, 89 (Mich. App. 2002).  Relying on a "plain reading of the statute" along with its intended purpose, the *Estes* court explained:

> [I]t is clear that this statutory cause of action for "oppression" in favor of minority shareholders who are abused by "controlling" persons, is a direct cause of action, not derivative, and though similar to a common-law shareholder equitable action, provides a separate, independent, and statutory basis for a cause of action.

*Estes*, 649 N.W.2d at 89.

Based on the plain language of the Michigan LLC Act and the holding in *Estes*, this court concludes that the shareholder oppression provision creates a direct cause of action

20

in favor of the Respondent Creditors.  Accordingly, the Respondent Creditors have not violated the automatic stay by asserting this cause of action in the 2017 or 2018 complaints.

The legal causes of action for breach of the operating agreement and tortious interference with contractual relations that were asserted in the 2017 complaint are not as easily characterized as direct or derivative under Michigan law.[15]  For example, the question of whether R.C. Hermann breached contractual duties owed directly to the Respondent Creditors is a fact-specific inquiry which will likely require interpretation of the operating agreement itself.  This court need not answer that question here.  For purposes of the present motion, it is sufficient to note that the harm alleged in both the breach of operating agreement and tortious interference counts of the 2017 complaint is that the Respondent Creditors suffered "dilution of their rights, distribution of return priority, security, voting strength and voting opportunities."  These are injuries that, if proven in the state court, directly damaged the Respondent Creditors as minority shareholders.  *See Matter of Buccaneer Resources, LLC*, 912 F.3d 291, 295 (5th Cir. 2019) ("As long as the injury a creditor is pursuing against a third party does not stem from the depletion of estate assets, the injury is a direct one that does not belong to the estate.").  Further, the filing of the adversary proceedings by the Trustee and the resulting settlement make it apparent that neither the assertion of these causes of action in the 2017 complaint nor the Respondent Creditors' attempts to reinstate these claims through pursuit of their appeal, impaired the bankruptcy estate's ability to pursue its claims against

---

[15]    Although the breach of operating agreement and tortious interference claims against Hermann were dismissed by the state court, the Respondent Creditors have appealed that order and are seeking reinstatement of these claims.

21

R.C. Hermann.  Accordingly, although this court expresses no opinion on the likelihood that the Respondent Creditors will prevail on these claims under state law,[16] the court finds that the causes of action set forth in the 2017 complaint assert an injury that is sufficiently direct that their pursuit does not violate the automatic stay.

R.C. Hermann does not dispute this general conclusion, at least as it pertains to the shareholder oppression cause of action.  In his motion, R.C. Hermann acknowledges that allegations of shareholder oppression, "to the extent that they are based solely" on conduct toward the Respondent Creditors, do not constitute property of the bankruptcy estate.  Nonetheless, he argues that the complaints in the 2017 and 2018 lawsuit include broad factual allegations, many of which overlap with the allegations made by the Trustee in the adversary proceedings against Hermann and his entities.  Quoting a recent Sixth Circuit case which stated that causes of action are defined by "[u]nderlying facts, not legal theories," *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384, 391 (6th Cir. 2019), Hermann asks this court to order the Respondent Creditors to dismiss all factual allegations of the state court complaints that reference Hermann's alleged mismanagement of the Debtor, fraudulent transfers of property of the estate, or other breaches of duty owed to the Debtor corporation itself.  The court is not persuaded by Mr. Hermann's argument.

The Sixth Circuit's analysis in *Blasingame* arose in a different context and was more nuanced than the single statement on which R.C. Hermann relies.  The chapter 7 trustee in *Blasingame* asserted various causes of action against the individual debtors and several non-debtor entities, including the debtors' trust, seeking to recover assets for

---

[16]     Indeed, the dismissal of these counts by the state trial court suggests that they may not be viable claims.

the benefit of the estate. The trustee ultimately sold these causes of action to a creditor, Church Joint Venture, which was not successful in pursuing them. After the sale, the same creditor sought derivative standing to assert a new claim that the debtors' trust was self-settled and that the trust assets should be included as property of the debtors' estate. Relying on definitions developed in the res judicata context, the Sixth Circuit opined that a "'cause of action' is best understood as a set of facts giving rise to one or more grounds for legal relief." *Id.* at 390 (citations omitted). Although the second "self-settled" complaint emphasized a different legal theory than the prior complaint and contained some additional facts, the Sixth Circuit concluded that it "essentially rehash[ed] the same factual allegations . . . *and request[ed] the same relief*" as the prior lawsuit. *Id.* (emphasis added). Because the right to sue under any legal theory based on those facts had been sold, neither the estate nor Church had the ability to raise those same factual allegations again "dressed up in a different legal theory." *Id.* at 393. Accordingly, dismissal of the "self-settled" complaint was appropriate.

*Blasingame* thus stands for the proposition that the same party (the estate or a creditor, derivatively on behalf of the estate) may not rely on the same factual allegations to bring a second lawsuit, seeking redress for the same injury, under a different legal theory.[17] It does not address the situation currently before the court, which involves different parties (the Respondent Creditors and not the estate or its representative) raising similar factual allegations in support of legal theories (primarily, shareholder oppression), that if proven, resulted in a separate and distinct injury to their interests as minority

---

[17] As the Bankruptcy Appellate Panel noted, this is sometimes referred to as the prohibition against claim-splitting. *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 585 B.R. 850, 863 (6th Cir. B.A.P. 2018).

shareholders under state law.  In such instances, both state and federal law make it clear that the focus is not on specific factual allegations, but on the "nature of the injury for which relief is sought."  *In re Educators Group Health Trust*, 25 F.3d at 1284; *see also Karmanos*, 2018 WL 6252038 at *3 (shareholder may sue on his or her own behalf when a "separate and distinct" loss occurs or when a direct, independent duty to the individual shareholder is violated).

Applying this standard, the court finds no basis for striking specific factual allegations from the state court complaints.  The vast majority of facts pled in the state court complaints support the shareholder oppression claim, which this court has already concluded is a direct claim, as well as the other causes of action.  As Mr. Hermann correctly points out, some of the factual allegations could also support derivative claims that were property of the estate and, if so, were already resolved by the Trustee's settlement with Mr. Hermann.  For instance, both the 2017 and 2018 complaints include an allegation that Hermann "breached the President's fiduciary duties, including, inter alia, those of loyalty, honesty and fair dealing."[18]  The complaints also allege that the state court defendants, including Hermann, caused Tamarack to improperly dispose of real estate[19] and that the defendants improperly granted mortgages on that property.[20]

However, the existence of some overlap between the facts asserted in the state court complaints and the factual allegations previously made by the Trustee in the adversary proceedings is not the focus of this court's inquiry.  *See In re Seven Seas*

---

[18]      *See* 2017 Complaint at ¶ 11 (Dkt. No. 225, Exh. 4), Amended 2018 Complaint at ¶ 14 (Dkt. No. 287.)

[19]      *See* 2017 Complaint at ¶ 12(f), Amended 2018 Complaint at ¶ 15(f).

[20]      *See* 2017 Complaint at ¶ 12(g), Amended 2018 Complaint at ¶ 15(g).

*Petroleum, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008) (explaining that "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct"); *Weiner v. Weiner*, 2008 WL 746960, *5 (W.D. Mich. Mar. 18, 2008) (noting that some amount of factual overlap may be expected in minority oppression claims, which by definition include a "continuing course of conduct" or a "series of actions" that interfere with minority shareholder interests). Here, the Respondent Creditors have asserted state court causes of action based on alleged injuries they suffered directly. There is no basis for concluding that they violated the automatic stay by making any specific factual allegation in support of these independent causes of action.

## IV.  CONCLUSION.

Importantly, in this case, the pursuit of the Respondent Creditors' claims in state court has had, and will have, absolutely no impact on the bankruptcy estate. The Trustee, who did have standing to complain that the Respondent Creditors were violating the stay and infringing upon property of the estate, chose not to do so.  She filed adversary proceedings against R.C. Hermann and the related defendants and ultimately reached a settlement of those claims, while the state court litigation was pending. The Trustee has now fully liquidated the bankruptcy estate and her final report has been approved. The case will soon be closed, at which point the automatic stay will no longer apply.

R.C. Hermann, as a non-debtor state court defendant and party to a settlement with the Trustee, is not among the parties whose interests are protected by the automatic stay. Even if he was, the shareholder oppression claim asserted by the Respondent Creditors in the state court is a direct claim that they have standing to assert on their own

25

behalf.  The injury alleged in the breach of contract and tortious interference claims is also sufficiently direct that pursuit of those causes of action does not violate the automatic say.  For these reasons, R.C. Hermann's motion to enforce the automatic stay is denied. A separate order shall enter accordingly.

**IT IS SO ORDERED.**

**Dated January 29, 2020**



James W. Boyd
United States Bankruptcy Judge